SEALED

FILED
2008 FEB 25 P 2: 58
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* FRED BROWN<br>Plaintiff<br><br>v.<br><br>MEDCO HEALTH SOLUTIONS, INC.; MEDCO HEALTH SOLUTIONS OF TEXAS, L.L.C.; CVS CAREMARK CORPORATION; and CAREMARK, L.L.C.<br>Defendants | § § § § § § § § § § § § § § § § | CIVIL ACTION<br><br>NO. SA08CA0150 XR<br><br>**FILED IN CAMERA<br>AND<br>UNDER SEAL**<br><br>JURY TRIAL REQUESTED |

## COMPLAINT FOR DAMAGES UNDER THE FEDERAL FALSE CLAIMS ACT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Relator, Fred Brown, by and through the undersigned counsel, and acting on behalf of and in the name of the United States of America, brings this civil *qui tam* action pursuant to 31 U.S.C. § 3729, *et seq.* to recover actual damages, compensatory damages, treble damages, civil penalties, and equitable relief from the following Defendants: Medco Health Solutions, Inc.; Medco Health Solutions of Texas, L.L.C.; CVS Caremark Corporation; and Caremark, L.L.C., and in support thereof, Relator would respectfully show as follows:

### A. PARTIES

1. Relator, **Fred Brown**, is a United States citizen and resident of the State of Texas. Fred Brown has personal knowledge of the false claims and false records which Defendants caused to be presented to the federal government or its agent, and has knowledge of the

1

fraudulent practices which resulted in Defendants' wrongful receipt of federal funds as a result of such wrongful conduct.

2.  Defendant, **Medco Health Solutions, Inc.,** is a foreign corporation which is authorized to do business in the State of Texas and which maintains its principal office and corporate headquarters in Franklin Lakes, New Jersey. Service of process with respect to this Complaint may be accomplished by serving this defendant's registered agent for service of process, as follows: CT Corporation System, 350 North St. Paul St., Dallas, Texas 75201.

3.  Defendant, **Medco Health Solutions of Texas, L.L.C.,** is a wholly owned subsidiary of defendant Medco Health Solutions, Inc. Medco Health Solutions of Texas, L.L.C. is a Texas limited liability company which maintains its principal office and headquarters at 15001 Trinity Blvd., Fort Worth, Texas. Service of process with respect to this Complaint may be accomplished by serving this defendant's registered agent for service of process, as follows: CT Corporation System, 350 North St. Paul St., Dallas, Texas 75201.

4.  Defendants, Medco Health Solutions, Inc. and Medco Health Solutions of Texas, L.L.C., are hereinafter sometimes referred to collectively as "**MEDCO**".

5.  Defendant, **CVS Caremark Corporation,** is a foreign corporation which does business in Texas and which maintains its principal office in Woonsocket, Rhode Island. Service of process with respect to this Complaint may be accomplished by serving the following agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

6. Defendant, **Caremark, L.L.C.**, is a limited liability company which is authorized to do business in Texas. Service of process with respect to this Complaint may be accomplished by serving this defendant's registered agent for service of process, as follows: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

7. Defendants, CVS Caremark Corporation and Caremark, L.L.C. are hereinafter sometimes referred to collectively as "**CAREMARK**".

### B. JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction with respect to this lawsuit, pursuant to 31 U.S.C. § 3729, *et seq.* (the False Claims Act), 28 U.S.C. § 1345, and 31 U.S.C. § 3732(a). The Court has personal jurisdiction over each defendant herein inasmuch as each one transacts business on a regular basis in the judicial district for the Western District of Texas; alternatively, the fraudulent acts and wrongful conduct which form the basis of the *qui tam* claims herein occurred wholly within the Western District of Texas federal judicial district, and such wrongful acts were committed within this judicial district by each defendant joined herein. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1345 and 31 U.S.C. § 3732(a), because the acts and violations asserted in this Complaint occurred wholly within the judicial district for the Western District of Texas, and the false claims which are the subject of the instant cause arose wholly within this judicial district.

### C. DISCLOSURES

9. As required by 31 U.S.C. § 3730(b)(2), it is hereby declared that Relator intends to promptly serve on the United States Government a copy of this Complaint, along with a written

3

disclosure of substantially all material evidence and information which Relator possesses. Relator intends to effectuate such service by sending copies of the Complaint and such written disclosure by registered or certified mail to the United States Attorney for the Western District of Texas and/or to the civil process clerk at the office of the United States Attorney for the Western District of Texas as well as the Attorney General of the United States of America in Washington, D.C., in accordance with Rule 4(i)(1)(A) and (B) of the Federal Rules of Civil Procedure.

10. This action is not based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the United States Government is already a party.

11. This action is not based upon any public disclosure of information within the meaning of 31 U.S.C. § 3730(e)(4)(A). To the extent that any of the allegations contained in this Complaint may have been publicly disclosed within the meaning of 31 U.S.C. § 3730(e)(4)(A), Relator represents, within the meaning of 31 U.S.C. § 3730(e)(4)(B), that he is the original source of the information inasmuch as Relator has direct and independent knowledge of the information on which the allegations in this Complaint are based and he is voluntarily providing the information contained in this Complaint to the United States Government before the unsealing of the instant civil action which is based on such information.

### D. STATEMENT OF SPECIAL INTENTION HELD BY RELATOR

12. Relator, Fred Brown, is an elected member of the House of Representatives of the State of Texas. Relator has commenced this *qui tam* civil action against Defendants in order to recover federal monetary funds which Defendants have fraudulently obtained from the State of Texas through fraudulent billing and false claims practices. The State of Texas, at all relevant

4

times, has been the custodian of such federal funds and the agent of the United States Government with respect to the administration and payment of such federal funds. Relator will be entitled to a fee and/or a portion of any and all recoveries which may result from the commencement, settlement, and/or prosecution of the instant cause. Therefore, Relator hereby declares that he intends to gratuitously donate any monies to which he may become entitled or which he may recover as the initiator and/or *ex rel.* plaintiff of this *qui tam* action - - after attorneys' fees are first allocated or paid to the attorneys who represent Relator herein - - to the State of Texas for the benefit of the Texas Children's Health Insurance Program ("CHIP").

### E. ALLEGATIONS

13.  MEDCO and CAREMARK are two of the nation's largest pharmacy benefit management ("PBM") companies. These defendants provide prescription drug benefit management services to various private, corporate and governmental health care plans, including partially as well as wholly self-funded or self-administered plans. In fact, MEDCO and CAREMARK serve as the PBM providers for the health care plans administered by various Texas state agencies. As pharmacy benefit managers, MEDCO and CAREMARK manage prescription drug benefits for these various health plans by providing, for example, mail order prescription drugs to plan beneficiaries, procurement and maintenance of preferred drug formularies, administrative services, billing services, pricing services, claims services, and rebate/discount negotiations with manufacturers and pharmaceutical industry vendors or suppliers.

14.  One of these Texas state agencies, the Employees Retirement System of Texas ("ERS"), oversees retirement benefits for various current and former employees of the State of Texas. In addition to administering retirement benefits, ERS administers the Texas Employees

Group Benefits Program ("TEGBP"). The TEGBP is a group health/dental/life/disability insurance plan for retirees of Texas state agencies. The ERS and MEDCO entered into a pharmacy benefit management contract whereby the ERS became a plan sponsor and MEDCO provided pharmaceutical or pharmacy benefit management services and related services to ERS-covered persons or plan participants. In this regard, the United States Government provides federal funds to the ERS, in part, to fund certain authorized programs, including the program which provides health insurance benefits and prescription drug benefits for certain State employees / retirees.

15.     Another one of these Texas state agencies, the Teacher Retirement System of Texas ("TRS"), administers a statewide active member group health benefits program known as TRS-ActiveCare. CAREMARK, pursuant to a pharmacy benefit management contract with the TRS, administers the pharmacy benefits program or serves as the PBM under the TRS health care plan for Medicare Part D prescription drug benefits.

16.     Pursuant to the pharmacy benefit management contracts entered into with these various Texas governmental agencies, MEDCO and CAREMARK agreed to comply with all applicable statutes and regulations in providing services under the PBM contracts, and these defendants undertook the obligation to process the covered prescription drug claims of various State employees and retirees whose prescription drug benefits are administered by and through these State agencies. During the relevant time period, MEDCO and CAREMARK regularly and continuously provided claims reports, along with written invoices concerning numerous and various individual claims, to these Texas governmental agencies, including claims for payment of monetary compensation and reimbursement in amounts which were allegedly owed by these governmental agencies with respect to prescription drugs which had been purchased by covered

persons or plan beneficiaries. A substantial number of these claims, or prescription drug purchases, have involved dispensing of and payment for prescription drugs under the Medicare Part D plan. In doing so, MEDCO and CAREMARK knew that they were collecting federal funds in connection with payments made to Defendants by these various Texas governmental agencies.

17. In December of 2003, the U.S. Congress enacted the Medicare Prescription Drug, Improvement and Modernization Act of 2003, 42 U.S.C. § 1395w-101 *et. seq.*, which provides for prescription drug coverage benefits to Medicare beneficiaries, effective January 1, 2006. Pursuant to 42 U.S.C. § 1395w-115, the United States Government contracts for and subsidizes prescription drug insurance plans offered by third-party insurers and/or self-funded plans which provide drug benefits to Medicare beneficiaries. Various Texas state agencies, including, but not limited to, the ERS and TRS, have contracted with the United States Department of Health and Human Services (Centers for Medicare and Medicaid Services) ("CMS") to administer the prescription drug program commonly referred to as Medicare Part D. Various Texas state agencies, such as the ERS and the TRS, in turn, entered into pharmacy benefit management contracts with MEDCO and CAREMARK, allowing such PBMs to manage the process pertaining to prescription drug benefits provided to the plan participants / beneficiaries. Defendants, as part of their contracts with these Texas state agencies, processed prescription drug claims for covered persons / beneficiaries under the respective plans. Furthermore, at the end of certain claims processing periods, MEDCO and CAREMARK provided claims reports and written invoices (claims for payment) to these State agencies in order to obtain payment of the amounts necessary to pay the claims processed and the fees due to the PBMs with respect to such claims.

7

18. For instance, during an eight-month period in 2006, the United States Government paid at least $19,000,000 to the ERS and it is estimated that in 2007 the United States Government paid between $2,000,000 and $3,000,000 per month to the ERS as a subsidy for Medicare Part D eligible prescription drug benefits managed by MEDCO. In 2006 the United States Government paid $34,611.607 to the TRS and for 2007 the United States Government paid $52,329,617 to the TRS in subsidies for Medicare Part D eligible prescriptions drug benefits managed by Caremark.

19. However, MEDCO and CAREMARK, in violation of 31 U.S.C. § 3729(a)(1), (2) and (7), knowingly engaged in systematic fraudulent practices, made or caused to be made fraudulent claims, and used or presented false and misleading records and billing statements in connection with wrongfully and excessively charging these Texas state agencies in connection with such matters. This wrongful conduct by Defendants also occurred when these defendants provided claims reports and written notices to the Texas State agencies and caused them to make payments utilizing federal funds with respect to such false claims. In order to accomplish their scheme and artifice to defraud, Defendants engaged in a systemic practice of over-billing for the prescriptions provided to the various current and retired Texas employees and the claims processed. For example, Defendants fraudulently authorized numerous pharmacies to dispense a (much greater) quantity of prescription drugs - - allowing them to charge more for such dispensed prescriptions - - in violation of the quantitative limits defined and outlined in the terms or conditions of the applicable PBM contracts, thereby resulting in illegal overcharges. Furthermore, Defendants fraudulently and systematically encouraged dispensing pharmacies to substitute one brand of drug over another brand of drug, or systematically manipulated or duped the dispensing pharmacies to dispense a brand-name drug when the PBM contract specified that a generic

equivalent was to be dispensed, thereby increasing the costs of the prescriptions to the State agencies and increasing profits for Defendants. Furthermore, MEDCO and CAREMARK fraudulently encouraged dispensing pharmacies to charge a higher dispensing fee for filling prescriptions than was permitted under the PBM contracts, which also illegally increased the amount of the bills, or claims, which Defendants submitted to the ERS and the TRS, again, for the purpose of increasing PBM profits. Furthermore, Defendants routinely and fraudulently charged the Texas agencies more than once for the same claim, a claim being each instance in which a single medication (including refills) was dispensed to an ERS or TRS plan member or beneficiary. Defendants also routinely and fraudulently charged a greater administration fee per prescription filled (*i.e.*, per claim), in violation of the respective PBM contracts with these State agencies. Defendants also routinely and fraudulently violated the drug coverage exclusion clauses of their respective PBM contracts with the ERS and the TRS by permitting certain medications to be dispensed without prior authorization. Furthermore, Defendants routinely and fraudulently charged a higher average wholesale price ("AWP") instead of the agreed-upon discounts specified in the terms and conditions of the PBM contracts, which increased the profits to the PBM and wrongfully increased the cost of the claims to the State agencies.

### F. DAMAGES

20. As previously stated, Texas State agencies such as the ERS and the TRS were grantees or recipients of money from the United States Government and / or the United States Government reimbursed the ERS and the TRS for at least a portion of the money used for the payment of fraudulent claims submitted by MEDCO and CAREMARK in this regard. Because MEDCO and CAREMARK submitted false or fraudulent claims and claim reports with respect to

obtaining payment from the ERS and the TRS, Relator would show that Defendants are liable to the United States Government for all actual damages and civil penalties - - of not less than $5,000 and not more than $10,000 - - with respect to each false claim or fraudulent statement submitted, plus treble damages, as well as any and all other damages which the federal government has sustained.

### G. Jury Demand

21.     Relator respectfully requests that all issues be decided through trial by jury, in accordance with the Seventh Amendment of the United States Constitution and FED. R. CIV. P. 38.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Relator, Fred Brown, acting on behalf and in the name of the United States of America, demands that Defendants be cited to appear and answer herein, that all issues of fact be decided by jury trial, and that a judgment be entered in favor of the United States of America for all actual damages, treble damages to the United States, plus civil penalties of $10,000 for each false claim, and that Defendants pay for all costs of this civil action, including all investigative fees and expenses, as well as reasonable and necessary attorneys' fees and court costs. Furthermore, Relator, Fred Brown, on his own behalf, demands and prays that he be awarded, as the *qui tam* plaintiff, the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) (25% of the proceeds obtained for or collected by the United States if the United States intervenes and takes over the prosecution of this civil action, or 30% of the proceeds obtained for or paid to the United States in the event that the United States does not intervene and take over the prosecution of this civil action) and / or any other applicable provision of law, in addition to reimbursement of all reasonable expenses incurred by Relator in connection with the

commencement and prosecution of the instant case. Finally, Relator respectfully requests an award for reasonable attorneys' fees and court costs, as well as all other and further relief, both legal and equitable, to which Relator may be entitled, and that Relator have such other and further relief, both legal and equitable, general and special, to which Relator and/or the United States of America may be justly entitled.

Respectfully submitted,

ROSENTHAL & WATSON, P.C.

By: /s/ Marc Rosenthal

**Marc G. Rosenthal**
**Attorney-in-charge**
State Bar No. 17281450
**Ernest C. Garcia**
State Bar No. 07632400
6601 Vaught Ranch Road, Suite 200
Austin, Texas 78730
Telephone: (512) 477-2275
Facsimile: (512) 474-2667

**Carlos Uresti**
State Bar No. 00785132
The Uresti Law Firm, P.C.
924 McCullough
San Antonio, TX 78215
Telephone: (210) 927-3412
Telecopier: (210) 921-0430

ATTORNEYS OF RECORD FOR
RELATOR, FRED BROWN